**Sherrie SMITH, Appellant,**

v.

**Theresa M. ELLIOTT, M.D., Appellee.**

No. 08–01–00254–CV.

Court of Appeals of Texas,
El Paso.

Jan. 24, 2002.

Rehearing Overruled Feb. 20, 2002.

John M. Lozano, Wyck Hebert, Law Office of John M. Lozano, Dallas, for Appellant.

Jeffery Mark Kershaw, Chamblee & Ryan, P.C., Dallas, Melissa Grace Rosenbaum, Keller, for Appellee.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

SUSAN LARSEN, Justice.

This appeal involves the application of the statute of frauds in an action against a physician for misrepresentation. Sherrie Smith appeals a directed verdict in favor of defendant, Theresa M. Elliott, M.D., on Smith's action brought under the Deceptive Trade Practices Act (DTPA), TEX. BUS. & COM.CODE ANN. § 17.46(b)(23).[1] We affirm.

### Facts

Sherrie Smith consulted Dr. Theresa Elliott about breast reduction surgery. Smith sought the procedure because she was having back problems and wanted to improve her appearance.

Smith testified at trial that she was hesitant to undergo the procedure because she was worried about possible negative results. Elliott assured her, however, that the results would be favorable. Smith testified that Elliott told her that her breasts would "look good" and that she would be very pleased with the results; she might have scarring but such scarring would be "fine-line." Elliott showed her before and after photos of similar surgeries she had performed that showed such positive results. Smith had the surgery, but the results were not as expected. Her breasts and her nipples were different sizes and she had very noticeable scarring.

Smith brought suit against Elliott under various theories, including misrepresentation under the DTPA. Elliott affirmatively pleaded the defense of statute of frauds.

At trial, Smith presented two witnesses: herself and Pat Cole, her stepmother. After Smith rested, Elliott brought a motion for directed verdict on the ground that the statute of frauds barred Smith's claims. Smith seemingly abandoned some of her claims, maintaining that she was only pursuing the misrepresentation cause of action at trial. She argued, "And what—we're not claiming that there's a breach of contract where services weren't provided as were contracted for. Our cause of action is that there was deception, there was misrepresentation for the purpose of in-

---

1. TEX. BUS. & COM.CODE ANN. § 17.46(b)(23) (Vernon 1987). This was the statute in effect when Smith filed her suit. Section 17.46 of the Code has since been amended. Effective September 1, 2001, the relevant statute is located at TEX. BUS. & COM.CODE ANN. § 17.46(b)(24) (Vernon Supp.2002).

ducing a person, an ignorant consumer, to act to that person's detriment."

The trial court ruled against Smith and entered final judgment for Elliott on the basis of the statute of frauds. In its judgment, the trial court stated that it "rendered judgment as a matter of law in favor of the Defendant for the reason that Plaintiff failed to introduce any evidence in writing, signed by Dr. Elliott, relating to medical care or results thereof." Smith appeals. Her sole point of error complains that the directed verdict was error because evidence of a writing is not required in a claim for misrepresentation.

## Standard of Review

■■■ A directed verdict for defendant is appropriate where plaintiff fails to present evidence raising a fact issue essential to plaintiff's right of recovery or where the evidence conclusively establishes a defense to the plaintiff's cause of action. *Prudential Ins. Co. of America v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000). In reviewing the grant of a directed verdict, we must consider all of the evidence in the light most favorable to the party against whom the verdict was instructed and disregard all evidence and inferences to the contrary. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994). Where there is conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper and we must remand the case for jury determination of the issue. *Id.*

## The DTPA, the MLIIA, the Statute of Frauds, and *Sorokolit*

■■■ The issue here is whether a DTPA plaintiff alleging misrepresentation, as Smith did, must show that the defendant doctor or health care provider made those representations in a signed writing where the defendant has properly raised the affirmative defense of the statute of frauds, as Elliott did. In answering this question, we look primarily to three sources: the MLIIA section 12.01(a); the Texas Supreme Court case of *Sorokolit v. Rhodes*, 889 S.W.2d 239, 243 n. 5 (Tex.1994); and the Statute of Frauds, Tex. Bus. & Com. Code Ann. § 26.01.

Section 12.01(a) of the Medical Liability and Insurance Improvement Act prohibits DTPA actions against physicians or health care providers for damages for personal injury or death caused by the physician's negligence. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 12.01(a) (Vernon Supp.2002).

Despite the restrictions of the MLIIA, DTPA actions against physicians and health care providers are not categorically prohibited. In *Sorokolit v. Rhodes*, 889 S.W.2d 239 (Tex.1994), the Texas Supreme Court held that MLIIA, while precluding DTPA suits against physicians based in negligence, does not prohibit DTPA suits based upon breach of express warranty or misrepresentation in cases where a physician guaranteed a particular result. *Id.* at 242–43. *Sorokolit* involved facts very similar to those here: plaintiff alleged that Dr. Sorokolit told her to choose a photograph of a nude model from a magazine, and promised that he would make her breasts look like those in the photo she selected. The results were not as guaranteed, and Rhodes sued Sorokolit for malpractice, breach of implied and express warranties under the DTPA, and knowing misrepresentation under the DTPA. Rhodes later dropped her malpractice claim. *Id.* at 240.

At issue here is footnote five in *Sorokolit's* majority opinion, which cautions:

Our conclusion that section 12.01(a) does not prevent suit under the DTPA for claims not based on medical malpractice does not suggest that such a suit will succeed either procedurally or on the merits. For example, under Texas com-

mon law, a physician is not presumed to warrant a cure or a particular result, but a physician may enter into such an agreement. Concerns that a physician's reassurances may be mistaken for a guarantee may properly lead courts to hesitate in concluding that such a contract was created or that a guarantee was offered. *In addition, we note the possible application of the statute of frauds in such cases when properly raised by a defendant as an affirmative defense. Id.* at 243 n. 5 [emphasis added] [citations omitted].

In criticizing *Sorokolit's* majority opinion, moreover, Justice Cornyn maintained that:

[T]he court has construed section 12.01 to allow a DTPA cause of action that is, in turn, barred by a 1977 amendment to the statute of frauds, another part of the same comprehensive statutory plan [which included the MLIIA]. Besides being misleading—to Ms. Rhodes and other litigants who will rely on the court's apparent recognition of a cause of action, only to find it barred by the statute of frauds—this construction violates our own mandate that 'in ascertaining the intent of the Legislature, all laws bearing on the same subject are to be considered and given effect.' *Id.* at 245 (Cornyn, J., dissenting).

The statute of frauds states:

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to:

. . .

(8) an agreement, promise, contract, or warranty of cure relating to medical care or results thereof made by a physician or health care provider as defined in Section 1.03, Medical Liability and Insurance Improvement Act of Texas. This section shall not apply to pharmacists. Tex. Bus. & Com.Code Ann. § 26.01.

It seems clear to this Court, reading the statutes and *Sorokolit* together, that where a defendant physician in a DTPA case raises the affirmative defense of statute of frauds and plaintiff fails to prove a writing, signed by defendant, which contains the representation or promise relied upon, the DTPA claim fails. Nevertheless, here plaintiff Smith attempts to create a distinction between breach of warranty actions, arising in contract, and misrepresentation actions, arising in tort. In so doing, she relies upon the older case of *Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985).

It is true that *Weitzel* states "oral representations are not only admissible but can serve as the basis of a DTPA action." *Weitzel,* 691 S.W.2d at 600. We do not agree, however, that in cases involving a physician or health care provider it creates a statute of frauds exception in misrepresentation cases. We conclude this for two reasons.

First, *Weitzel* was decided in 1985, nine years before *Sorokolit.* Thus, Smith's argument that *Weitzel* refines the language of the later case is backward: if anything, *Sorokolit* refines and creates an exception to the broader holding of *Weitzel.* Second, and in a similar vein, *Sorokolit* deals specifically with cases involving physicians and health care providers. *Sorokolit,* 889 S.W.2d at 240. In contrast, *Weitzel* enunciates a broad principle of DTPA law in a case dealing with representations that a home complied with the city building code,

a more traditional field for misrepresentation claims. *Weitzel*, 691 S.W.2d at 599. *Sorokolit* addresses only actions involving a particular class of defendants, deemed by the legislature to need a comprehensive and specifically designed statutory scheme. *Sorokolit*, 889 S.W.2d at 245 (Cornyn, J. dissenting). The statute of frauds has a section specifically addressing representations by physicians and health care providers; there is no such protection for sellers of remodeled homes or DTPA defendants generally. TEX. BUS. & COM.CODE ANN. § 26.01. We therefore conclude *Weitzel* does not create an exception to the more specific situation addressed in the statute of frauds section relied upon by Elliott.

Finally, we note that Smith's allegations in this case were that Elliott made false, misleading or deceptive representations and knowingly failed to disclose information that induced her to agree to surgery, specifically that her breasts would look good, that she would be very pleased with the results, and she would have only fine-line scarring. In a written Disclosure and Consent to Medical and Surgical Procedures, however, Smith acknowledged in writing that the breast reduction procedure involved risks of infection, scars, skin loss, and numb nipples. This signed writing contradicts the verbal representations Smith claims the doctor made to her. In these circumstances, the statute of fraud's requirement that a physician's representation be in writing to be actionable seems eminently fair. We overrule Smith's sole point of error.

## Conclusion

We affirm the trial court's judgment.